## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

LOUIS E. THYROFF,

            Plaintiff,

     - against -

NATIONWIDE MUTUAL INSURANCE
COMPANY, NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, NATIONWIDE LIFE
INSURANCE COMPANY, NATIONWIDE
GENERAL INSURANCE COMPANY,
NATIONWIDE PROPERTY AND CASUALTY
INSURANCE COMPANY, NATIONWIDE
VARIABLE LIFE INSURANCE COMPANY and
COLONIAL INSURANCE COMPANY OF
WISCONSIN,

            Defendants.

------------------------------------------------------------------ x

:
:   Civil Case Number:  00-CV-6481(B)
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:   JUNE 16, 2008
:
:

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants (collectively, "Nationwide") submit this memorandum in support of their

Motion for Summary Judgment dated June 16, 2008 (the "Motion").  The relevant undisputed

law and facts negate the Plaintiff Louis E. Thyroff's sole remaining cause of action for

conversion against Nationwide in the Amended Complaint ("Complaint").  Plaintiff's conversion

claim has evolved over time.  Plaintiff now asserts that by reclaiming its AOA computer system

Nationwide wrongfully took his "virtual document" which contained, primarily, the names of

those persons to whom he could market the insurance product of his side-business, Contract Off

Duty Police Security Insurance Agency ("COPS").  Plaintiff further contends that Nationwide's

allegedly wrongful taking of this electronic information (the "COPS Information") caused

COPS' demise and seeks to recover as damages the fair market value of the COPS' business as well as sums that he would have made during COPS' projected lifetime.

Plaintiff's conversion claim fails upon the undisputed facts of this case which indicate that he cannot satisfy the key elements of a conversion claim. First, Plaintiff made no demand for return of COPS Information. Second, Plaintiff cannot prove "ownership" of COPS Information because Nationwide owned the "paper" on which it was written. Third, there is no legally cognizable ownership interest in the generally available and accessible data of which COPS Information was comprised. Fourth, by Plaintiff's own admission, COPS' demise was caused by Plaintiff's lack of time and funds and not because Nationwide "took" COPS Information as Plaintiff now alleges. Fifth, Plaintiff made no attempt whatsoever to mitigate the damages he now claims. Finally, the undisputed facts conclusively establish that profits allegedly lost upon COPS' demise cannot be proved with the requisite degree of legal certainty. For each and all these reasons, judgment should enter in Nationwide's favor upon Plaintiff's sole remaining conversion claim.

## **FACTS**

The undisputed facts are set forth, each with proper citation, in Nationwide's Local Rule 56(a)(1) Statement ("***Stmt.***"). They are all established by the pleadings and evidence in this case:

Procedural History: By Order dated July 24, 2001, this Court dismissed Plaintiff's conversion claim as legally insufficient. Stmt. ¶ 13.[1] The Second Circuit Court of Appeals (the "Second Circuit"), upon Plaintiff's appeal, disagreed with that conclusion and in addressing

---

[1]     This Court said: "Thyroff failed to state a claim as to conversion of any business records on the AOA because Nationwide owns the AOA. He also failed to state a claim as to any personal records because he does not allege that Nationwide exercised dominion over those records to the exclusive of Plaintiff." Stmt. ¶13.

Nationwide's alternative argument for affirmance of the dismissal, observed that whether a claim for conversion of an intangible was cognizable under New York law was unsettled. Stmt. ¶¶ 14-15. Consequently, the Second Circuit certified to the New York Court of Appeals (the "Court of Appeals") the question of whether New York law recognized a claim for conversion of "electronic data." Stmt. ¶ 15. The Court of Appeals accepted certification and held, as a matter of first impression, that a claim for conversion of an "electronic document" was cognizable under New York law. Stmt. ¶ 16. The Second Circuit then remanded Plaintiff's action back to this Court for resolution of Plaintiff's sole remaining conversion claim. Stmt. ¶ 17.

Plaintiff's Relationship with Nationwide:   Plaintiff was a Nationwide independent contractor exclusive agent pursuant to the terms of an Agent's Agreement with Nationwide. Stmt. ¶1.  During his agency relationship with Nationwide, Plaintiff entered into a lease agreement with Nationwide (the "AOA Lease") through which Plaintiff leased computer hardware and software for his use in conducting his Nationwide business (collectively, the "AOA Computer System"). Stmt. ¶¶ 3, 5. The terms of the AOA Lease and the Agent Agreement were concurrent. Stmt. ¶ 4.

Nationwide terminated the Agent's Agreement and the AOA Lease between Plaintiff and Nationwide effective September 19, 2000 (the "Termination Date").[2] Stmt. ¶ 8. Thereafter, Plaintiff properly returned all his physical Nationwide policyholder files to Nationwide, Stmt. ¶ 10, and Plaintiff was denied any further access to Nationwide's AOA Computer System. Stmt. ¶¶ 5, 9.

---

[2]   The Agent's Agreement was terminable *at-will* by either Plaintiff or Nationwide at any time. Stmt. ¶ 2.

Plaintiff Operated COPS Before *and After* His Termination From Nationwide: Prior to the Termination Date, and while representing Nationwide, Plaintiff established, owned and conducted another insurance business, COPS, which he incorporated in February of 1999. Stmt. ¶ 6. COPS was marketed to and provided professional liability insurance to active and retired law enforcement officers who were engaged in off-duty assignments. Stmt. ¶ 7. The first COPS' master insurance policy was prepared in late 1999 and Plaintiff sold his first COPS' insurance policy in 2000. *Id.*

Plaintiff continued to operate COPS after the Termination Date and did so until May of 2002. Stmt. ¶ 11. Plaintiff ceased doing COPS' business in June of 2002 for reasons wholly unrelated to his lack of "access" to COPS Information. Stmt. ¶ 12. Plaintiff ceased operations of COPS in June of 2002 because he was engaged in other employment (unrelated to the sale of insurance) and lacked sufficient time or funds to devote to COPS. *Id.*

Plaintiff's Claim for Conversion of COPS Information: After the Termination Date, Plaintiff, never demanded the return of any COPS Information from Nationwide. Instead, Plaintiff only requested that Nationwide reactivate the Nationwide AOA Computer System. Stmt. ¶ 20. It was only after suing Nationwide for conversion (among other things) that Plaintiff ever alleged that he demanded the return of "my personal information and data" from Nationwide. Stmt. ¶ 22. Plaintiff never specifically identified a single document relating to his "demand" for the return of COPS Information. Stmt. ¶ 21. Now, for the first time, Plaintiff identified COPS Information as the object of his conversion claim. Stmt. 23.[3]

---

[3]      Plaintiff concedes that his conversion claim *does not relate* to the Nationwide policyholder information stored on Nationwide's AOA Computer System. Stmt. ¶ 18.

According to Plaintiff, COPS Information is a list of names of potential COPS' customers, *i.e.* active and retired police officers. Stmt. ¶ 24. COPS Information consists of data obtained from public sources -- specifically from police agencies and trade organizations of active and retired police offices as well as their contact and membership lists. Stmt. ¶ 25. Importantly, websites of law enforcement-related organizations are readily available on the Internet. Stmt. ¶ 26. Most, if not all, such law enforcement websites include the contact information for the organization. *Id.*

Plaintiff's Damages Theory for Conversion of COPS Information: COPS had no customers in 1999 and issued only 25 insurance policies in 2000. Stmt. ¶ 30. In 2001, COPS sold 78 new insurance policies and renewed 23 of the preexisting policies (*i.e.* 23 of the 25 policyholders from 2000 renewed their policies). *Id.* Actual sales and renewal figures for the year 2002 are unknown. *Id.* Based upon COPS' 25 sales in 2000 and the 78 new and 23 renewal sales in 2001, Plaintiff seeks both the fair market value of COPS as of the Termination Date -- valued between $205,000 and $275,000 -- and lost COPS' income of $873,281. Stmt. ¶ 31.

## LEGAL ARGUMENT

### I.   Standard

A court is empowered to grant summary judgment if the pleadings and other evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). While summary judgment will not lie if there is a *genuine* dispute about a *material* fact, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added), "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

-5-

judgment." *Id.* While the burden rests on the moving party, where the motion is brought against the party who will bear the ultimate burden of proof at trial, the movant satisfies his burden by pointing to the absence of evidence to support an essential element of the non-moving party's claim. *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996); *Celotex, supra* at 323 (failure of proof on an essential element necessarily renders all other facts immaterial).

Where the movant meets his initial burden, "[t]he onus shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of his claim." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008). The opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts...'" *Caldorola v. Balabrese*, 298 F.3d 156, 160 (2d Cir. 2002), quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Summary judgment may be granted where the non-movant's evidence is "merely colorable, or is not significantly probative." *Anderson, supra* at 249-250. The non-movant may not rest upon mere conclusory assertions or denials, but must set forth "concrete particulars" to show that a trial is necessary. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks omitted); *Anderson, supra* at 249 (non-moving party must present "specific facts."); *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). An issue of fact is not created by submissions that, by omission or addition, contradict prior deposition testimony. *See e.g., Hayes v. New York City, Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). The grant of summary judgment is appropriate where the court finds that no rationale jury could find in favor of the non-movant. *Annis v. County of Westchester*, 136 F.3d 239, 247 (2d Cir. 1998).

**II.**   **Plaintiff made no demand upon Nationwide for COPS Information**

Plaintiff fails to establish a claim for conversion of COPS Information. Conversion is "[t]he unauthorized assumption and exercise of the right of ownership over goods belonging to

-6-

another to the exclusion of the owner's rights." *Thyroff*, 832 N.Y.S.2d at 876 (internal quotation marks and citations omitted). Where original possession is lawful, a conversion does not occur until *after a demand and refusal to return* the property. "The universal rule in this state is that, where property comes lawfully into the possession of a party, he cannot be charged for a conversion in failing to surrender it to the owner unless a demand therefor is made...; and this rule applies although in his answer the defendant may set up a hostile title and claim to own the property." *Tompkins v. Fonda Glove Lining Co.*, 188 N.Y. 261, 80 N.E 933, 934 (1907) (internal citations omitted); *see also D'Amico v. First Union Nat. Bank*, 285 A.D.2d 166, 728 N.Y.S.2d 146, 151 (1st Dept. 2001) (same); *Ford Garage Co. v. Brown*, 198 A.D. 467, 191 N.Y.S.2d 539, 540-541 (3d Dept. 1921) (same); *Schloss v. Danka Business Systems PLC*, 234 F.3d 1263 (Table), 2000 WL 1715262 *3 n. 2 (2d Cir. 2000) (demand and refusal are essential allegations of conversion claim upon rightful possession).[4]

It is well-settled that "[t]he demand must be... sufficiently definite and complete to apprise the defendant of the *specific property* claimed..." 90 C.J.S. Trover and Conversion § 43 (emphasis added). Thus, in *Ford Garage*, *supra*, the plaintiff's demand upon a sheriff for the return of specific property, prior to the sheriff's sale, was sufficient to state a claim for conversion where the plaintiff identified the motor, informed the sheriff that it was the plaintiff's property and forbid the sheriff's sale of it. *Id.* at 540-541. Conversely, in *Condrey v. SunTrust Bank of Georgia*, 429 F.3d 556 (5th Cir. 2005), when the plaintiff brought a conversion claim after orally requesting that the defendant return "his stuff," the Fifth Circuit Court of Appeals rejected the conversion claim, stating "[w]e do not find that a demand hinging on the word 'stuff' is sufficiently specific to constitute an unequivocal demand." *Id.* at 568.

---

[4]      Copies of all unreported cases are attached hereto.

The record in this case is devoid of any demand by Plaintiff to Nationwide for return of COPS Information.  Indeed, Plaintiff's Complaint makes no mention of COPS (much less COPS Information).  Stmt. ¶ 20.  Instead, according to Plaintiff's Complaint, Nationwide declined his generic request to reactivate the Nationwide AOA Computer System following the Termination Date.  *Id.*  While Plaintiff recently attempted to craft a conversion claim by attesting that he demanded return of "my personal information," Plaintiff does not (and cannot) allege that he specifically asked Nationwide to return *his COPS Information*; Plaintiff did not.  Stmt. ¶ 21.  In fact, after asserting for the first five years of this litigation that Nationwide converted "his" Nationwide policyholder information, Plaintiff suddenly, and for the first time, defined his conversion claim in terms of personal information including COPS Information after this Court ruled that Plaintiff had no contractual right to Nationwide policyholder information post-termination.  Stmt. ¶ 18 (conceding that Plaintiff has no claim for conversion of Nationwide's policyholder information), 22.  The undisputed facts prove that Plaintiff never timely made a specific demand for the return of COPS Information from Nationwide and judgment should enter for Nationwide on Plaintiff's conversion claim.  *See Apex Ribbon Co. v. Knitwear Supplies, Inc.*, 22 A.D.2d 766, 253 N.Y.S.2d 643, 644 (1st Dept. 1964) (conclusory allegation of demand and refusal insufficient to defeat summary judgment).

## III.   Plaintiff does not "own" COPS Information

Both the Court of Appeals and the Second Circuit recognized that proof of "ownership" is an essential element of a conversion claim.  While the Court of Appeals held that an "electronic document"-- the virtual equivalent of a paper document -- may be subject of a conversion claim under New York law, it expressly declined to address whether Plaintiff could prove "ownership" of the "electronic document" he now claims Nationwide converted.  *Thyroff*

*v. Nat. Mut. Ins. Co.*, 8 N.Y.S.3d 283, 832 N.Y.S.2d 873, 874 n. 2 (2007); *see Thyroff v. Nat.*
*Mut. Ins. Co.*, 460 F.3d 400, 408 (2d Cir. 2006).

Plaintiff cannot prove "his ownership" of either the medium on which the COPS
Information was written or the data it contained. Nationwide owned the AOA Computer System.
Stmt. ¶ 13; *see also* Stmt. ¶ 5. Nationwide thus owned the electronic components which were
the COPS Information. Nationwide did not "take" any electronic information from Plaintiff.
Instead, as this Court already held, Nationwide simply reclaimed the AOA Computer System --
which Nationwide owned -- to which "[P]laintiff no longer possessed any right to utilize" as of
the Termination Date. *See* Decision and Order dated October 26, 2004 ("2004 Order") at 6
(Docketed at 117).

Accordingly, under both federal and state law, the user of the electronic
medium/computer is not the "owner" of an "electronic document" as against the provider or
owner of the electronic medium/computer. For example, the federal Computer Fraud and Abuse
Act ("CFAA") provides a private right of action only against one who "intentionally accesses *a*
*computer without authorization* or exceeds authorized access, and thereby obtains...information
from any protected computer...." *See* 18 U.S.C. § 1030(a)(2)(C) (emphasis added); 18 U.S.C.
1030(g); *see also SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 608-609 (E.D.Va. 2005)
(no cause of action under CFAA where defendants had lawful access to the computer server and,
thus, information on the computer server). Similarly, and as this Court has held, under the
Electronic Communications Privacy Act ("ECPA") the provider of an electronic communication
or storage system *cannot* be held liable to the user of its system for interception or examination
of communications by or to the user. *See* 18 U.S.C. 2701; *see also* Decision and Order dated
July 24, 2001 ("2001 Order") at 5 (dismissing Plaintiff's claim for violation of the ECPA for

failure to state a claim upon which relief may be granted); *accord Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114 (3d Cir. 2004) ("[b]ecause Fraser's e-mail was stored on Nationwide's [computer] system (which Nationwide administered), its search of that e-mail falls within § 2701(c)'s exception"). The New York legislature also made clear that a computer owner engages in no misconduct even for intentional alteration or destruction of computer data or programs. New York's computer tampering statute, Penal Law § 156.20 states:

> A person is guilty of computer tampering in the fourth degree when he or she causes, causes to be used or accesses a computer, computer service, or computer network *without authorization by the owner* and he or she intentionally alters or destroys computer data or a computer program of another person.

*Id.* (emphasis added). *See* Domino, Supplementary Practice Commentary, McKinney's Cons. Laws of N.Y., Book 39, Art. 156 (2007 Supp.), p. 128 ("The result is that a person who is authorized to use the computer but is not authorized to intentionally alter data or programs can do so without violating this statute"). Thus, it is clear that Nationwide's ownership of the computer and its contractually permissible denial of access to Plaintiff could not expose it to liability under these statutory schemes and it should be similarly insulated here.

To use the Court of Appeal's analogy, Nationwide owned the "paper" on which Plaintiff wrote.[5] *Thyroff*, 832 N.Y.S.2d at 879. Nationwide was not divested of its ownership of the

---

[5]     The Second Circuit, in dicta, stated that Nationwide's ownership of the AOA Computer System did not establish its ownership of "electronic data." *Thyroff*, 460 F.3d at 404-405. Although the Second Circuit's certified question referred to "electronic data" (and declined to address ownership of such "electronic data"), the Court of Appeals limited its holding to "electronic records" that "were indistinguishable from printed documents." *Thyroff*, 832 N.Y.S.2d at 879. Because the Court of Appeals looked to the medium ("documents") as well as the contents ("data"), the Second Circuit's comments are inapposite. Nevertheless, as shown herein, Plaintiff did not "own" the contents of COPS Information because that data was publicly available.

"paper" simply because Plaintiff chose to write on it.[6]  Nationwide is not liable in conversion for taking back that which belonged to it.

Just as Plaintiff cannot prove ownership of the electronic medium of COPS Information, Plaintiff cannot prove ownership of its contents.[7]  Plaintiff alleges that COPS Information consisted of the names and addresses of potential COPS' customers -- active and retired law enforcement officers -- obtained from the membership and contact lists of police agencies and trade associations of active and retired law enforcement officers.  Stmt. ¶ 25.  These organizations have readily-found Internet websites which contain contact information.  Stmt. ¶ 26.

Such public and readily accessible information is not susceptible of "ownership" under New York law.  New York courts have declined to recognize a cause of action for misappropriation of the identity of prospective users of a product or service where such information is readily ascertainable from public sources.  *See e.g., Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387, 328 N.Y.S.2d 423, 427-428 (1972) (no misappropriation where customers openly engaged in business in advertised locations and their names and addresses could readily be found by those in the trade or from commercially available lists); *Empire Farm Credit ACA. v. Bailey*, 239 A.D.2d 855, 657 N.Y.S.2d 211, 212 (3d Dept. 1997) ("any farmer is a potential customer for

---

[6]      There is no dispute that Nationwide's AOA Computer System was the original medium of the COPS Information.

[7]      The Court of Appeals stated that "[i]t generally is not the physical nature of a document that determines its worth, it is the information memorialized in the document that has intrinsic value.  A manuscript of a novel has the same value whether it is saved in a computer's memory or printed on paper. So too, the information that Thyroff allegedly stored on his leased computers in the form of electronic records of customer contacts and related data has value to him regardless of whether the format in which the information was stored was tangible or intangible.  In the absence of a significant difference in the value of the information, the protections of the law should apply equally to both forms-physical and virtual."  *Thyroff*, 832 N.Y.S.2d at 879.

the accounting/business services offered by plaintiff and, as established by defendant's proof, there are a number of ways to determine the names and addresses of such potential customers"); [8] *H. Meer Dental Supply Co. v. Commisso*, 269 A.D.2d 662, 702 N.Y.S.2d 463, 465 (3d Dept. 2000) ("Plaintiff has failed to prove that such information is not readily discoverable through public sources"); *Inflight Newspapers, Inc. v. Magazine In-Flight, LLC*, 990 F.Supp. 119, 129 (E.D.N.Y. 1997) (the character of information as protected or not protected is not transformed merely because the information is in the form of bits and bytes). Information consisting of names, addresses and contact information of customers "[i]s not capable of being owned the same way a corporate share is; a compilation of customer information does not, as a matter of course, carry with it the right to exclude all others from possessing the same information... whereas stock certificates convey the right to exclusive ownership of the shares set forth in them." *Alliance for Telecommunications Industry Solutions, Inc. v. Hall*, No. CCB-05-440, 2007 WL 3224589 *14 (D.Md. Sept. 27, 2007).

Plaintiff cannot prove that he owned either the medium or the contents of COPS Information. Thus, judgment should enter for Nationwide on Plaintiff's conversion claim.

## IV.    **Plaintiff cannot prove damages claimed by the alleged conversion**

Plaintiff asserts that Nationwide's alleged conversion of COPS Information caused COPS' demise, thereby entitling him to an award of damages comprised of the fair market value

---

[8]    Although Plaintiff has asserted that COPS Information was developed at great time and expense, these allegations do not suddenly provide him with an ownership interest in COPS Information. *See Empire Farm Credit, supra* ("While plaintiff asserted that its customer base was developed through great investment of time, effort and expense, such assertion was wholly conclusory and without any factual basis") (internal citations omitted); *see also Starlight Limousine Service, Inc. v. Cucinella*, 275 A.D.2d 704, 713 N.Y.S.2d 195, 196 (2d Dept. 2000) ("Furthermore, notwithstanding the plaintiff's expenditures of time and effort in compiling the customer list, this type of information can be acquired with no extraordinary effort from nonconfidential sources and therefore is not entitled to trade secret protection").

of the COPS business as well as income he would have earned during COPS' lifetime (projected at 22 years). Stmt. ¶¶ 29, 31. As a matter of law, Plaintiff cannot prove the damages he claims.

A.   The alleged conversion did not cause COPS' demise.

Lost profits are recoverable only where they are the natural and probable consequence of the tortious act alleged. *Wolf Street Supermarkets, Inc. v. McPartland*, 108 A.D.2d 25, 487 N.Y.S.2d 442, 449-450 (4th Dept. 1985); *cf. Intimate Bookshop, Inc. v. Barnes & Noble, Inc.*, No. 98 Civ.5564, 2003 WL 22251312 *5 (S.D.N.Y. Sept. 30, 2003) (dismissing claims under Robinson-Patman Act at summary judgment where the plaintiff failed to show a causal link between its alleged injuries and the alleged wrongful conduct); *Kenford Co., Inc. v. Erie County*, 67 N.Y.2d 257, 261, 502 N.Y.S.2d 132 (1986) (lost profits must be "directly traceable to the breach, not remote or the result of other intervening causes").

Here, Plaintiff continued to operate COPS after the Termination Date and *without COPS Information* for over eighteen months. Stmt. ¶¶ 11-12. Incredibly, Plaintiff's own evidence establishes that Plaintiff wrote more COPS' insurance policies *without* COPS Information than with it. Stmt. ¶ 30. Moreover, Plaintiff *always* had access to information on COPS' policyholders, despite assertions Plaintiff has made to the contrary. Stmt. ¶ 27. Finally, and importantly, COPS ceased doing business for reasons unrelated to Plaintiff's access to COPS Information. Plaintiff was precluded from continuing COPS by the time demands of his other employment and by an overall lack of funds to invest in COPS. Stmt. ¶ 12.

This undisputable evidence defeats Plaintiff's claim that COPS' demise was caused by the loss of COPS Information. The fact that Plaintiff now testifies otherwise -- and only after this Court denied Plaintiff's motion for consequential damages arising from Nationwide's failure to pay him ASC -- does not create a genuine issue of material fact to defeat Nationwide's Motion. *Hayes, supra* (factual issues created solely by an affidavit crafted to oppose a summary

-13-

judgment motion are not genuine issues for trial); *Kaplan v. DePetro*, --- N.Y.S.2d ---, 2008 WL 2066602 *1 (2d Dept. May 13, 2008) (affidavit contradicting prior deposition testimony presents a "feigned factual issue," insufficient to defeat summary judgment); *see also Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (summary judgment appropriate where plaintiff offers only unsupported allegations, conjecture or surmise, or conclusory statements to support an essential element of his case).[9]  Because loss of COPS Information did not cause the damages Plaintiff allegedly suffered, judgment should now enter for Nationwide on Plaintiff's conversion claim.

     B.      <u>Plaintiff's abject failure to mitigate precludes recovery of damages.</u>

The law required that Plaintiff mitigate the damages which he claims stem from the loss of COPS Information.  *Cf. Cohen v. Allied Van Lines*, No. 01-102/196, 2002 WL 221078 *3 (1st Dept. Jan. 22, 2002) citing 23 NY Jur. 2d, Conversion § 63 ("Plaintiff was obligated to exercise reasonable efforts to mitigate damages... and her utter failure to do so precludes recovery of the full value of the furniture allegedly 'converted'"); *see also Jewish Press, Inc. v. Willner*, 190 A.D.2d 841, 594 N.Y.S.2d 51, 51 (2d Dept. 1993).

Here, Plaintiff made no attempt to duplicate the data allegedly comprising COPS Information.  Plaintiff did not contact any trade associations or other sources from which he allegedly first obtained the names of the active and retired law enforcement officers in the COPS Information in an effort to re-create COPS Information.  Stmt. ¶ 28.  Plaintiff's own expert admits an Internet-search revealed websites of and for the trade organizations that Plaintiff

---

[9]     Mr. Moat's opinion in this regard is, of course, irrelevant.  "[A]n expert's opinion is not a substitute for a plaintiff's obligation to provide evidence of facts that support the applicability of the expert's opinion to the case."  *Virgin Atlantic Airways Ltd. v. British Airways PLC*, 69 F. Supp. 2d 571, 579 (S.D.N.Y. 1999), *aff'd*, 257 F.3d 256 (2d Cir. 2001).

identified as sources of potential COPS' clients and, further, that such organization-websites contained contact information. Stmt. ¶ 26.

Where the undisputed facts conclusively establish that Plaintiff made no attempt to mitigate his damages (in violation of his duty to do so), summary judgment in Nationwide's favor is warranted. *Hutton v. Sally Beauty Co., Inc.*, No. 4:02-CV-00190-SEB-WG, 2004 WL 2397606 (S.D. Ind. Oct. 22, 2004); *see Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005), citing *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998) (vacating lost wages award upon showing that plaintiff had failed to mitigate damages); *Jewish Press, supra.* For this separate reason, judgment is properly entered for Nationwide on Plaintiff's conversion claim.

> C.    Plaintiff cannot prove his alleged damages with reasonable certainty.

Under well-settled New York law, Plaintiff cannot recover lost-profits damages when they cannot be proved with reasonable certainty. *See Kenford, supra; Schonfeld v. Hillard*, 218 F.3d 164, 172 (2d Cir. 2000) (amount of lost profits must be "'capable of measurement based upon known reliable factors without undue speculation.'"). When "a new business seek[s] to recover for loss of future profits, a stricter standard is imposed for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty." *Kenford, supra* at 131 (massive quantity of evidence from multiple experts representing "business and industry's most advanced and sophisticated method for predicting the probable results of contemplated projects" was nevertheless insufficient to satisfy the legal requisite of reasonable certainty); *see also Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 333 (2d Cir. 1993) (lengthy testimony and voluminous documentation calculating lost profits by reference to performance of comparable companies, market studies, plaintiff's business and promotional plans, and plaintiff's subsequent

-15-

sales and earnings, insufficient to support lost profits award because it depended entirely on speculation); *Kidder, Peabody & Co, Inc. v. IAG International Acceptance Group, N.V.*, 28 F.Supp.2d 126 (S.D.N.Y. 1998) (lost profits denied where its calculation depends "'upon a host of assumptions concerning uncertain contingencies, and applies numerous variables about which an expert can only surmise'"). Likewise, lost profits calculations for a business with nominal fiscal history is inherently and unduly speculative and cannot support an award of such damages. *Suffolk Sports Ctr. , Inc. v. Belli Constr. Corp.*, 212 A.D.2d 241, 248 (2d Dept. 1995).

Plaintiff's damages analysis --seeking the fair market value of the COPS business as well as lost profits for a twenty-two year period -- is premised upon Nationwide reclaiming its AOA Computer System as of the Termination Date thereby denying Plaintiff access to COPS Information. Stmt. ¶¶ 29, 31. However, Nationwide's alleged conversion occurred, if at all (which Nationwide denies) on or about September 19, 2000 when it terminated the Agent's Agreement and the AOA Lease. It is undisputed that COPS had: (a) no customers before the year 2000; (b) only 25 customers in all of 2000; and (c) merely 78 new customers with only 23 existing customers renewing their policies in 2001. Stmt. ¶ 30 (identifying COPS' policies from 1999-2001 and stating that the number of new COPS' customers for the year 2002 is unknown). On the basis of this scant business history, Plaintiff (through his expert) presumes that COPS would have been successful for each of the next twenty-two years, generating (at present value) $873,281 in income. In addition, Plaintiff (through his expert) calculates the fair market value of COPS between $205,000 and $275,000. Stmt. ¶ 31. The Plaintiff's damages cannot be proved with reasonable certainty as evidenced by four major flaws in his expert's assumptions.

First, while Plaintiff (through his expert) presumes that COPS would have produced income through 2023 (assuming that Plaintiff would work until age 70), the damages analysis

makes no reference to any expenses or overhead necessarily incurred to achieve such income. Stmt. ¶ 32. This Court may properly reject Plaintiff's lost profits calculations for failing to consider expenses and overhead. *See e.g. 342 Holding Corp. v. Carlyle Construction Co.*, 31 A.D.2d 605, 295 N.Y.S.2d 248, 249 (1st Dept. 1968) ("[w]e may not sustain a finding of damages through loss of profits where it is evident that it was arrived of upon the basis of a patently improper formula [where plaintiff failed to consider gross income and account for overhead]"); *Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*, No. 95 Civ. 8450, 1998 WL 422482 *6 (S.D.N.Y. July 22, 1998) (rejecting lost profits claim as speculative, including for lack of proof of overhead and material costs).

Second, Plaintiff (through his expert) projects the amount of income and commissions he allegedly lost *because of COPS' demise*. Plaintiff, however, can only guess as to the number of persons (whether or not they were part of the COPS Information) who might have purchased COPS insurance over the twenty-two year period he claims he would have operated COPS. *See* Moat Report attached as Exhibit A to Counsel Aff. In *Millenium Expressions, Inc. v. Chauss Marketing, Ltd.*, No. 02 Civ. 7547, 2007 WL 950070 (S.D.N.Y. Mar. 30, 2007), the court declined to award the plaintiff sums for "estimated orders" that he expected to obtain from customers. According to the court, "[w]hatever his expectations, these commissions had not been booked at the time of termination, and any award would be entirely speculative." *Id.* at *12. Numerous cases are to the same effect. *See, e.g., Toltec Fabrics, Inc. v. August Inc.*, 29 F.3d 778, 784 (2d Cir. 1994) (evidence of lost profits insufficient where there is no reasonable certainty of future sales); *DiSanto v. Forsyth*, 258 A.D.2d 497, 684 N.Y.S.2d 628, 629 (2d Dept. 1999) (holding that "[g]eneral allegations of lost sales from unidentified lost customers are insufficient...." to meet even the pleading requirements for claim of special damages); *De*

-17-

*Marco-Stone Funeral Home, Inc. v. WRGB Broadcasting Inc.*, 203 A.D.2d 780, 610 N.Y.S.2d 666, 668 (3d Dept. 1994) (same); *Hamil America, Inc. v. GFI*, 193 F.3d 92, 108 (2d Cir. 1999), quoting *Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F. Supp. 1328, 1340 (S.D.N.Y. 1997) ("When seeking an award of damages for lost sales, the burden is on the plaintiff to demonstrate that it would have made the sales but for the infringing activity"). Thus, in *Storerunner Network, Inc. v. CBS Corp.*, 8 A.D.2d 127, 779 N.Y.S.2d 45 (1st Dept. 2004), the court affirmed summary judgment for the defendant on the plaintiff's claim that it suffered lost profits following the defendant's failure to provide advertising because "it is plain" that such claim would be "unduly speculative." *Id.* at 46.

Third, extended extrapolations of sales over decade-long periods is legally fanciful, particularly where (as here) there is no proven track-record of profits. In *Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 238 F. Supp. 2d 604 (S.D.N.Y. 2002), the court held that a five-year extrapolation of profits based on actual revenues of less than one year was *per se speculative*. *Id.* at 611 (describing the presumption that the business environment would remain "static and rectilinear" as a fundamental and fatal conceptual flaw); *see also Trademark Research,* 995 F.2d at 333 (refusing to permit plaintiff to extrapolate seven years of profits from four months of sales); *Kenford,* 502 N.Y.S.2d at 133 (no recovery where calculation presumed twenty years profitability); *compare Levine v. American Federal Group, Ltd.*, 180 A.D.2d 575, 580 N.Y.S.2d 287, 288-289 (1st Dept. 1992) (declining to hold on summary judgment that lost profits could not be proved, where plaintiff had an existing relationship with corporate clients of seven years duration).

Finally, Plaintiff, through his expert, purports to provide five "comparator" niche insurance products to support his lost profits analysis. Plaintiff assumes that COPS would have

-18-

been profitable over a twenty-three year period because five other niche insurance companies

selling products wholly unrelated to the COPS' product have been profitable. *See* Moat Report

at 4 attached as Exhibit A to Counsel Aff. (assuming profitability of COPS based upon five

"comparator" insurance companies but providing absolutely no financial history or data of the

revenues and expenses of those companies). Courts, however, routinely disallow plaintiffs to

mask the deficiencies in their proof by reference to the performance of other companies. "Under

New York law,... calculations based on other similar businesses are too speculative and will not

satisfy the requirement that a reasonable means of calculating the amount be provided." *H &P

Research, Inc. v. Liza Realty Corp.*, 943 F.Supp. 328, 331 (S.D.N.Y. 1996) (internal quotation

marks, brackets and citations omitted). *See also Trademark Research,* 995 F.2d at 333 (holding

speculative expert's assumption that plaintiff would duplicate the success of a competitor with a

different business structure who had acted at a different time). This is particularly so where the

"similar business" advanced is, in fact, engaged in non-comparable business activities and

absolutely no objective data regarding those non-comparables is proffered.

   For all of these reasons -- and for each reason independently -- Plaintiff cannot prove his

lost profits with reasonable certainty and judgment should now enter for Nationwide on

Plaintiff's conversion claim.

-19-

## CONCLUSION

Based upon the foregoing, Nationwide's Motion for Summary Judgment should be granted.

DEFENDANTS,
**NATIONWIDE MUTUAL INSURANCE**
**COMPANY, ET AL**

By:_____

Ben M. Krowicki
Bingham McCutchen LLP
One State Street
Hartford, CT  06103
(860) 240-2700 (phone)
(860) 240-2818 (fax)

Barbara L. Schifeling, Esq.
Damon & Morey LLP
298 Main Street
1000 Cathedral Place
Buffalo, New York 14202-4096
(716) 856-5500

*Attorneys for Defendants*

Dated:   June 16, 2008
         Hartford, Connecticut

A/72567945.2

## CERTIFICATION

I hereby certify that on June 16, 2008 a true copy of the foregoing memorandum in support of Nationwide's motion for summary judgment was served upon the following parties via operation of the court's electronic notification system or sent by first-class mail, postage pre-paid, to any party not participating in the court's electronic notification system:

Dennis Gruttadaro, Esq.
Brown & Tarantino, LLC
45 Exchange Boulevard, Suite 300
Rochester, New York 14614
(585) 454-3377
dgruttadaro@btattys.com

William P. Tedards, Jr.
1101 30th Street, N.W.  Suite 500
Washington, D.C. 20007
(202) 797-9135
skeener@tedards.net

*Attorneys for Plaintiff*

these addresses having been so designated.

Ben M. Krowicki

A/72567945.2